## Midwest Commercial Credit Company v. Woloszyn.

*J. Raymond Sowash,* for plaintiff; *J. Regis Byrne,* for defendant.

COPELAND, P. J., March 22, 1928.—On Dec. 21, 1926, the plaintiff corporation issued a præcipe for a writ of replevin for one Oldsmobile sedan. The said writ was returnable on the second Monday of January, 1927, to wit, Jan. 10, 1927. The affidavit accompanying the præcipe was signed by one S. Robert Shinn, Jr., representative of the plaintiff corporation, who averred that the value of the automobile was $500.

On Dec. 21, 1926, the plaintiff's bond in replevin was filed, the said bond being signed in typewriting "Midwest Commercial Credit Company, by S. Robert Shinn, Jr.," having the word "Seal" printed after the name of S. Robert Shinn, United States Fidelity and Guaranty Company, G. E. Wright, Attorney in Fact, with the word "Seal" printed after the name of G. E. Wright and United States Fidelity and Guaranty Company. The corporate seal of the plaintiff corporation and the corporate seal of the United States Fidelity and Guaranty Company are not affixed to the bond. This bond was approved by J. Arthur Thomas, Prothonotary of Westmoreland County, and filed Dec. 21, 1926.

The return of William Feightner, Sheriff, shows that the automobile was in possession of one J. S. Leffler, whose name was added to the writ, and who was made a party defendant. The said automobile was replevied at 3.35 o'clock P. M., Dec. 21, 1926. The return, as to Mary Woloszyn, the party defendant named in the writ, was *nihil habet,* and the automobile was delivered to the plaintiff. On Jan. 4, 1927, counsel for the said Mary Woloszyn filed a motion to quash the writ of replevin issued in this case and assigned in support of said motion the following reasons:

"1. The writ of replevin in this case was issued without the plaintiff's having, before the issuing of the said writ, made and filed the affidavit

required by the first and eighth sections of the Act of April 19, 1901, P. L. 88, in that: (1) The affidavit is not made by an officer of the plaintiff corporation; (2) it does not show the authority of the affiant to make the affidavit on behalf of the said plaintiff; (3) it does not show the relationship of the affiant to the corporation plaintiff.

"2. The writ of replevin in this case was issued without the plaintiff's having, before the issuing of the writ, made and filed the bond required by the first and eighth sections of the Act of April 19, 1901, P. L. 88, in that (1) the bond is not the bond of the person applying for said writ of replevin, because *(a)* it is not signed by the president or vice-president or other proper officer of the said plaintiff corporation; *(b)* it does not have affixed thereto the common or corporate seal of said corporation plaintiff; *(c)* it is not attested by the secretary of the said plaintiff company; *(d)* the signature 'Midwest Commercial Credit Company by S. Robert Shinn, Jr.,' is not sufficient to bind the plaintiff; *(e)* bond does not show the authority of the subscriber to bind the plaintiff corporation. (2) The bond is not the bond of the surety for the plaintiff corporation, because *(a)* it is not signed by the president or vice-president of the said corporation purporting to sign as surety, United States Fidelity and Guaranty Company; *(b)* it is not attested by the secretary surety corporation; *(c)* the signature 'United States Fidelity and Guaranty Company, G. E. Wright, Attorney in Fact,' is not sufficient to bind the said surety; *(d)* the bond does not show the authority of the said subscriber to bind the said surety company."

On Jan. 19, 1927, by leave of court, the plaintiff corporation filed an amended affidavit of value and plaintiff corporation was given ten days in which to file proper bond. On March 31, 1927, a second bond was filed, having seals of both the plaintiff corporation and surety company affixed thereto. On March 31, 1927, answer of plaintiff corporation to motion to quash writ of replevin was filed. This answer sets up that by reason of an order of this court made on Jan. 19, 1927, the plaintiff corporation filed a proper affidavit and substituted a new bond, meeting the objections of the defendant.

There are two questions involved in this case, and the first may be stated as follows: Is an affidavit of value, signed by a representative of a plaintiff corporation, without stating why an officer of the corporation did not sign the said affidavit, sufficient to sustain the issuing of a writ of replevin? This question may be answered in the affirmative. The purpose of the affidavit of value is to protect the prothonotary when he fixes the amount of bail to be given in an action of replevin. If the prothonotary waives that right, then he takes the risk of not fixing the proper amount of bail. Section 8 of the Act of March 19, 1903, P. L. 39, reads as follows: "The prothonotary shall, in the first instance, fix the amount of bail and approve or reject the security offered; his action in either regard shall be subject to revision by the court, or, in vacation time, a judge thereof at chambers. In order to determine the amount of bail, the plaintiff shall make an affidavit of the value of the goods and chattels, which value shall be the cost to the defendant of replacing them should the issue be decided in his favor. The court, or, in vacation time, a judge thereof at chambers, may, upon motion, increase the amount of bail required; may require new bail, if for any reason the old bail has become insufficient, and may enter a *non pros.* against the party in default if he has the goods and chattels and its orders be not complied with, or may permit the substitution of bail for that already given and enter an *exoneratur* on the bail-bond."

From this section it will be observed that the affidavit of value is merely used for the purpose of determining the amount of bail that is to be required in the case. It is true that the affidavit of value is presumed to be the cost to the defendant of replacing the goods, but there is nothing in the act which states specifically that this affidavit of value shall be filed with the prothonotary, as is the case dealing with the bond.

In Newman v. Globe Indemnity Co., 275 Pa. 374, it is stated "that the purpose of the affidavit of value, in an action of replevin, is merely to inform the prothonotary as to the amount of bond demandable. The making of it by the plaintiff, who is really acting for a bank of which he is cashier, does not void the proceeding in replevin. The record may be amended so that the plaintiff shall appear therein as cashier of the bank."

In Automobile Securities Co. v. Swisshelm, 269 Pa. 153, it was held:

"1. The statutory provisions as to the affidavit of value provided by the replevin acts of April 19, 1901, P. L. 88, and March 19, 1903, P. L. 39, is merely a direction to the prothonotary outlining the practice to be followed by him in fixing the bail, and defects in an affidavit are not fatal to the replevin.

"2. The omission in the affidavit of value of the words 'which shall be the cost to the defendant of replacing them' is not fatal to the replevin.

"3. Where a suit in replevin is instituted by a corporation, the proceedings are not rendered fatally defective because the affidavit of value fails to show the authority of the agent who made the affidavit."

From the decrees of the Supreme Court and lower courts, we are of the opinion that any defects or irregularities in the affidavit of value are not fatal to the action of replevin, and for that reason we deny the first reason assigned in the motion to quash the writ of replevin.

The second question involved in this case may be stated as follows: Is a bond in replevin signed by a representative of the plaintiff corporation and by the attorney-in-fact for the surety, having the word "Seal" printed after the names of the plaintiff corporation and surety, but not having the corporate seals of the plaintiff corporation and surety company attached thereto, sufficiently executed to warrant the issuing of a writ of replevin? Section 1 of the Act of April 19, 1901, P. L. 88, reads as follows: "That before any writ of replevin shall issue out of any court of this Commonwealth, the person applying for said writ shall execute and file with the prothonotary of the said court a bond to the Commonwealth of Pennsylvania for the use of the parties interested, with security in double the value of the goods sought to be replevied, conditioned that if the plaintiff or plaintiffs fail to maintain their title to such goods or chattels, he or they shall pay to the party thereunto entitled the value of said goods and chattels, and all legal costs, fees and damages which the defendant or other persons to whom such goods or chattels so replevied belong may sustain by reason of the issuance of such writ of replevin."

It is observed that this section requires that the bond be filed with the prothonotary when, before this act was passed, the bond was filed with the sheriff of the county and remained in custody of the sheriff. The prothonotary is the first person who passes upon the sufficiency of the bond. In the instant case, the original bond filed on Dec. 21, 1926, is marked "Approved and filed December 21, 1926, J. Arthur Thomas, Prothonotary." If this bond was not sufficiently executed, or was deficient, then, under section 8, the defendant, by filing exceptions with the prothonotary, could have had that question settled,

and if the prothonotary's decision was not satisfactory, then the question could have been decided by the court upon an appeal from the decision of the prothonotary.

In Hogg *v.* Washington Oil Co., 54 Pitts. L. J. 448, 17 Dist. R. 118, it was held: "That the prothonotary is the proper officer to pass on a bond in the first instance, and if the defendant is dissatisfied with the plaintiff's bond which has been accepted by the prothonotary, the proper practice is to file his exception in the first instance with the prothonotary; the other party can then appeal from the prothonotary's disposition of the exceptions."

We believe that in certain cases business principles should be applied in deciding questions of law. The plaintiff corporation is a finance corporation, probably engaged in the financing of automobiles and other personal property. In its quest for business, it is necessary for the plaintiff corporation to engage representatives who have certain powers and duties.

The surety company on the bond, to wit, the United States Fidelity and Guaranty Company, is a nationally known surety company; it is a recognized surety of this court and its attorneys-in-fact act for it in many communities. To a great extent, its business is to furnish bonds so that when a surety company appoints a person attorney-in-fact for it, then the action of that attorney-in-fact in signing a bond for the surety company in the course of its business binds the surety company, irrespective as to whether the corporate seal of the surety company is or is not affixed to the bond. It would be almost impossible for a surety company to furnish its corporate seal to each and every attorney-in-fact that it has in the various parts of this country.

We feel that a finance company or credit company is practically placed in the same position. These companies have representatives in various sections of the country; their duties are outlined. They may have power to collect moneys or to replevin certain property which is leased, and it would be almost impossible for the said finance or credit company to give to each of its agents or representatives a corporate seal to remain in possession of the said agent or representative. We, therefore, would hold that when an agent of a finance or credit company signs the name of the finance or credit company to a paper which is required in the course of his business, such signature of the agent will bind the principal; and we feel, also, that when an attorney-in-fact for a surety company signs the name of a surety company on a bond for which the agent has received a premium, then such signature of the attorney-in-fact will bind the principal, to wit, the surety company.

We feel, in the instant case, that even though the bond does not have the seal of the United States Fidelity and Guaranty Company, but is signed by G. E. Wright, attorney-in-fact, the said bond would be enforceable against the surety, by reason of the fact that it accepted a premium for the said bond; if there was no seal at all on the bond, the corporation would be liable.

The law is aptly stated in 7 Ruling Case Law, § 109, page 138, which reads as follows: "That the strict rule of the ancient common law was that a corporation could only act under its seal, and, therefore, was not bound by written contracts not under seal. This rule, however, was relaxed at an early date and the present general rule is that wherever a corporation is acting within the scope of the legitimate purpose of its institution, all parol contracts made by its authorized agents are express promises by the corporation; and all duties imposed on them by law and all benefits conferred at their request raise implied promises for the enforcement of which an action may well lie.

The great convenience of such rule, indeed, the necessity in some cases, to prevent a failure of justice will not be doubted."

In 4 Ruling Case Law, page 47, a bond is defined as follows: "Broadly speaking, a bond, sometimes denominated a specialty, as distinguished from a promissory note or other simple contract, is merely an obligation under seal; but it may be defined more precisely as an instrument under seal whereby the obligor binds himself to pay a certain sum of money to the obligee at a day appointed. The distinguishing characteristic of this form of instrument is the presence of a seal which imports solemnity and deliberation and makes it of a higher nature than simple contracts."

In section 3, same volume of Ruling Case Law, the law is stated: "That it is not necessary for the obligor to sign the instrument personally; this may be done by agent or proxy."

In the instant case, we feel that the bond as executed and filed on Dec. 21, 1926, is not void, but merely voidable, because the plaintiff corporation and the surety company, in order to defend in an action on the bond, would have to raise the defense that the representative or attorney-in-fact did not have authority to sign the bond.

In 7 Ruling Case Law, § 628, page 629, the law is aptly stated: "Where a corporation is sued on a contract formally entered into by its officers or agent, it is generally held that the defense that the officer or agent had no power from the corporation to make the contract is a special defense, which must, to enable the corporation to avail itself thereof, be specially pleaded."

In the instant case, leave of court was granted the plaintiff to file a proper bond; this bond was filed and approved on March 31, 1927. In view of the fact that suit could be maintained on the original bond filed, and in view of the fact that the plaintiff corporation and the surety company would have to plead specially non-authority of its agents in order to defeat an action on the said bond, we feel that the court had authority to order a new bond filed for the bond filed on Dec. 21, 1926, under the provisions contained in section 8 of the Act of March 19, 1903, P. L. 39, wherein it is stated that "the court may require new bail if for any reason the old bail has become insufficient, or may permit the substitution of bail for that already given."

The substitution of the new bond corrects any imperfections in the old bond. We have been unable to find any Pennsylvania authority wherein the question as to whether a bond may be amended has been decided, but we feel that the case of Hawley v. Bates, 19 Wendell, New York, 632, wherein it was held "that a replevin bond, imperfect in itself and executed with but one surety, will be allowed to be amended after service of the writ upon payment of costs of motion to set aside the proceedings. The substitution of the new bond saves the defendant harmless and secures him the benefit of the statute without imposing upon the plaintiff the trouble and expense of a new suit," should govern in this case.

We, therefore, feel from the authorities and reasons above set forth that it is discretionary with the court to permit the substitution of a new bond for an old bond, and this having been done by the plaintiff with leave of court, we are of the opinion that the second reason assigned in the motion to quash the writ of replevin should be dismissed, as the filing of the new bond amply protects the defendant in all her rights.

And now, to wit, March 22, 1928, after due and careful consideration, it is ordered, adjudged and decreed that the motion to quash the writ of replevin be and the same is hereby dismissed, at the cost of the defendant.

From William S. Rial, Greensburg, Pa.